LAW OFFICES OF ALVIN L. PITTMAN
Alvin L. Pittman, Esq. (SBN. 127009)
Email: office@apittman-law.com
5777 W. Century Blvd., Suite 1685
Los Angeles, CA  90045
Telephone:  (310) 337-3077
Facsimile:   (310) 337-308O

Attorneys for Plaintiff
N.T.A.A., Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| N.T.A.A., INC,<br><br>           Plaintiff,<br><br>     vs.<br><br>NORDSTROM, INC.; NIKE, INC., and DOES 1 through 10, Inclusive<br><br>           Defendants. | **Case No.: 2:21-cv-00398**<br><br>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT.**<br><br>**2.  FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN.**<br><br>**3. FEDERAL TRADEMARK DILUTION.**<br><br>**4. COMMON LAW TRADEMARK INFRINGEMENT.**<br><br>**5. COMMON LAW UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1.      Plaintiff N.T.A.A., INC. ("Plaintiff") is the legal and/or beneficial owner of certain registered Trademarks in the United States and Canada for commercial use and merchandising relative to goods, products, services and related rights associated with its registration with the United States Patent and Trademark Office.

2.      This action arises out of Defendants' willful and intentional acts of Trademark infringement.

3.      Defendant Nordstrom, Inc. (hereinafter "Nordstrom") owns and operates retail stores throughout the United States and, in joint venture with Nike, Inc., sells and distributes retail products and merchandise worldwide.

4.      Defendant Nike, Inc. (hereinafter "Nike") makes and sells athletic Footwear and related branded products and goods worldwide.

5.      Beginning in or about 2016 Defendants Nordstrom and Nike knowingly and willfully used Plaintiff's duly registered and protected trademark (a distinctively designed, "N") to advance their joint-venture exploitation of the consumer market in conscious disregard of Plaintiff's trademark and all rights associated with it.

6.      Defendants, as comparatively giant corporations, joined forces to put forth what they call the "Nordstrom X Nike 'N'" marketing program, in willful disregard of Plaintiff's protected trademark rights, and began their infringing conduct of selling products (of the type that Plaintiff was in the business of selling) at stores throughout the United States, Canada and, upon information and belief, throughout the world, through retail stores and via internet marketing.

7.      Defendants have created confusion in the marketplace by trading

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

in direct competition with Plaintiff, using Plaintiff's trademark and disrupting and interfering with Plaintiff's ability to build and grow the goodwill and customer recognition and loyalty associated Plaintiff's trademark.

8. Defendants were notified of their infringement and they failed and refused to cease and desist, disregarding Plaintiff's legal and commercial rights relative to the use of its trademark and leading to confusion in the marketplace and significant losses, injuries and harm to Plaintiff.

## **PARTIES**

9. N.T.A.A., INC. ("Plaintiff) is a Canada based on-line company that Designs, manufactures and distributes a wide range of products world-wide from its principal place of business in Toronto, Canada, using registered trademarks that it owns (registered in Canada, May, 25, 2017 and the United States, July 14, 2017).

10. Plaintiff is informed and believes that Defendant Nordstrom, Inc. ("Nordstrom"), is a Washington corporation with a place of business in Seattle, Washington. Further Plaintiff is informed and believes that Nordstrom owns and operates retail stores throughout Canada and the United States, including California, and in other countries around the world.

11. Plaintiff is informed and believes that Nike, Inc., ('Nike") is an Oregon Corporation, with a place of business in Beaverton, Oregon. Plaintiff is also informed and believes that Nike sells footwear and other goods throughout Canada, the United States including California, and in other countries around the world.

12. Defendants Doe 1 through Doe 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities herein. Plaintiff is informed

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those defendants".  Each reference in this Complaint to "Defendant" or" Defendants" refers also to all Defendants, including Nordstrom, Nike and all Defendants sued under fictitious names.

13.    Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, was the agent, employee, partners, joint-ventures or representative of each of the remaining Defendants. and in doing the things hereinafter alleged, was at times acting within the course and scope of this agency or employment, and at other times, acting in his own individual capacity. In the alternative, each of the individually named Defendants, as alleged herein below acted in concert and in furtherance of their fraudulent plan and scheme and each actively participated in the wrongful acts alleged herein below.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. Sections l33l and 1338, because the action arises under the Lanham Trademark Act of 1946, 15 U.S.C. Sec. l05l et seq., and pursuant to the supplemental jurisdiction provisions contained in 28 U.S.C. Sec. 1367

15.    This Court has personal jurisdiction over Defendants because, on information and belief, Defendants regularly conduct and have conducted business in California and this District by, among other things, operating stores and selling products throughout the state of California and in this District using Plaintiff's registered Trademark without authority, privilege or right, and in disregard of

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

Plaintiff's specific request that they "cease-and-desist. Specifically, on information and belief, Nordstrom and Nike engaged in the Infringing Conduct alleged herein at all of Nordstrom's stores in the Los Angeles area. Additionally, Defendants' conduct occurred in this District and has caused, and continues to cause Plaintiff to suffer harm in this District and throughout the United States, Canada, and the world.

16.　Venue is proper in this district pursuant to 28 U-S.C. Sec. 1391(b) in that, *inter alia*, a substantial portion of the acts giving rise to this case occurred within this district, and pursuant to 28 U.S-C. Sec. I400, in that Plaintiffs and these Defendants, or their agents, conduct business, reside or may be found within this district.

## PLAINTIFF'S BUSINESS AND TRADEMARK(S)

17.　Plaintiff's founder, Ryan Robinson, runs an on-line entertainment and retail sales company that designs, manufactures, brands and distributes a wide range of products including sportswear, casual clothing, jackets, shoes, underwear, socks, sporting goods, glassware, tote bags, formal clothing, shoes, tuxedos, socks, boxers, jackets, backpacks, cosmetic products and other goods, branding them with his trademark which is registered in both Canada and the United States.  Using electronic media, social media networks, Plaintiff sells his products to the entire World.  In addition, Plaintiff has used his trademark in movie productions to expand its marketplace recognition.

18.　Plaintiff's trademark was registered in Canada (No. TMA 1,040,647) on May 25, 2017 and in the United States (No.5,395,817) on July 14, 2017. (EXHIBITS A & B, respectively)

19.　On May 3, 2015, Plaintiff designed and started using a specially designed "N" to brand its products and represent its name.

20.     Plaintiff has continuously used the specially designed "N" to brand its products and to represent its company name, and Defendants were aware of this.

21.     Plaintiff is the legal and beneficial owner of the Federal trademark identified above, for a wide variety of merchandise and services, that Plaintiff designs, manufactures (or have manufactured), brands and distributes and retail sell over the internet (on-line) worldwide, using his protected trademark.

22.     Plaintiff has designed, manufactured and offered for sale and distribution, numerous products and services as it promotes, builds, grows and expands its marketplace presence, using its trademark to brand itself in the consumer marketplace worldwide.

23.     Neither Nordstrom nor Nike have registered, or could lawfully register, the Trademark(s) at issue, and Plaintiff has devoted, and is devoting, tremendous resources and efforts to build and grow market brand, size and recognition around its Trademark in the world-wide consumer marketplace.

24.     Plaintiff's Trademark(s) are valid, extant and in full force and effect. The Trademarks are all exclusively owned by Plaintiff. Plaintiff has continuously used each of the Trademarks from the registration date, or earlier, until the present time and at all times relevant to the claims alleged in this Complaint.

25.     As a result of advertising and sales, together with early marketplace pursuit of growth, consumer acceptance of the Trademark(s') identity, Plaintiff's products and services, and branded sales of these products and services using its Trademark(s) has begun to acquire secondary meaning in the minds of consumers throughout Canada, the United States and the world.

26.     The revenue from goods and services sold in Canada, the United States and in other countries around the world, which use the Trademark, is

substantial. The appearance and other features of the Trademarks are inherently distinctive and serve to identify Plaintiff as the source of products bearing the Trademarks.

27.     Plaintiff has been working hard to make its Intellectual Property, which is permanently intertwined with its wide range of consumable products, well recognized by the consuming public as it builds its brand.

28.     Plaintiff is a small but growing, fragile, minority enterprise engaged in growing its brand around its registered Trademark, and Defendants, major corporations, have willfully and intentionally interfered with and trampled upon Plaintiff's legal rights, fully aware that they have no legitimate claim and/or right to use Plaintiff's Trademark.

## Defendants' Infringing Acts

29.     On information and belief, at some point in and/or around 2016, Defendants Nordstrom and Nike, both whose names start with "N" entered a joint-venture and/or partnership to engaged in the business of selling consumer products, goods and merchandise that competes with the products, goods and merchandise designed, manufactured, marketed and sold by Plaintiff.

30.     On information and belief, in and/or around 2016, Defendants launched a "Nordstrom x Nike" marketing campaign that essentially copied and used Plaintiff's specially designed "N" as a trademark and branding symbol for products, goods and merchandise of the same types that it knew Plaintiff was selling on-line.

31.     Aware that Plaintiff was using the internet to market and sell Plaintiff's goods, products and merchandise branded by Plaintiff's registered Trademark, Defendants took to the internet to market the "Nordstrom x Nike" joint-

**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**

venture products, goods and merchandise using a confusingly similar "N" as that registered and protected by Plaintiff.

32.     Defendants also began outfitting displays at Defendant Nordstrom's stores which promoted the "Nordstrom x Nike" joint-venture using Plaintiff's registered and protected Trademark, a specially designed "N", around 2016, aware that Plaintiff had been using its specially designed "N" mark since 2015.

33.     Defendants were aware that Plaintiff was/is, compared to them, an economically weak and small minority business enterprise struggling to grow widespread recognition of its specially designed "N" mark.

34.     Defendants used their superior resources, size and names to essentially highjack, steal, transform and/or override Plaintiff's ownership rights in the specially designed "N" Trademark, and materially interfered with Plaintiff's efforts to grow its brand throughout Canada, the United States and the world, using the trademark which it began using in 2015 (for which it received official Trademarks from duly authorized Governments in 2017).

35.     As was foreseeable, Defendants' use of Plaintiff's Trademark caused confusion in the consumer marketplace and destroyed Plaintiff's efforts to grow its brand in the consumer marketplace using its specially designed and registered "N" Trademark.

36.     Defendants' used Plaintiff's Trademark in some promotional/marketing settings together with their names and in other promotional/marketing settings without their names.

37.     With or without Defendants' names added, the use of Plaintiff's "N" protected Trademark falsely suggests and communicates that Defendants and Plaintiff are all somehow engaged in a joint or collaborative venture.

38.     At one-point Defendants, through Nordstrom, falsely claimed over the internet, that Defendants owned the "N" Trademark; and later essentially told Plaintiff to move into another market because Plaintiff lacked the fame to take-on and/or to do anything about Nordstrom x Nike's actions in taking and using Plaintiff's trademark.

39.     Unauthorized use of Plaintiff's Trademarks in Defendants' "Nordstrom x Nike" joint-venture campaign has created confusion relative to what parties are involved in the "Nordstrom x Nike" campaign and who owns the "N" Trademark, and confusion as to Plaintiff's authorization, association with or endorsement of Defendants' goods, retail stores and online stores.

40.     Defendants knowingly and impermissibly traded, and trades on, Plaintiff's "N" Trademark destroying Plaintiff's ability to grow its marketplace share and goodwill, and pre-empting Plaintiff's rights associated with Plaintiff's intellectual property.

## COUNT ONE
### Trademark Infringement, 15 U.S.C. Sec. 1114 *et seq*.
### Against All Defendants and Does 1-10 (Collectively "Defendants")

41.     Plaintiff alleges and incorporates by reference, the full text of all the foregoing paragraphs, 1 through 40 and Exhibits as though fully set forth herein.

42.     Plaintiff holds valid trademark registrations for its "N" Trademark and has used it extensively and continuously in interstate commerce throughout the United States.

43.     The "N" mark is distinguished, unique and fanciful and has, under Plaintiff, begun to attain secondary meaning identifying with Plaintiff's name. Registration numbers: Canada (No. TMA 1,040,647) and United States (No.5,395,817) are deemed incontestable, pursuant to the filing of affidavits under 15 USC Sections 1058 and 1065.

44.     As a direct and proximate result of Defendants' use of Plaintiff's Trademark to brand, promote, market and sell their products, goods and merchandise the public has been and/or is likely to be confused, deceived and/ or to falsely believe that there is an association between Plaintiff on the one hand, and Defendants' stores and Nike, on the other.

45.     Defendants' distribution, sale and offer of sale of goods in connection with Plaintiffs' Trademarks in California and interstate commerce has caused and will cause the likelihood of confusion, deception, and mistake in that the public will very likely conclude that the goods sold, offered or distributed by the Defendants are authorized, sponsored, approved, or associated with the Plaintiff.

46.     As a direct and proximate result of Defendants' actions as above described, the public is likely to be confused as to the origin or source of Plaintiff's goods and services, i.e. the public is likely to believe either that Plaintiff is poaching on Defendants' rights relative to Plaintiff's efforts to sell its goods, products and merchandise in the world-wide marketplace over the internet (online stores), or that Plaintiff is associated with the products, merchandise and goods being sold as part of the "Nordstrom x Nike"  campaign, when in truth and in fact Plaintiff is not.

47.     Plaintiff is informed and believes that Defendants currently operate, manufacture, distribute, and offer to sell and/or sell merchandise throughout the United States in interstate commerce, branding such merchandise with Plaintiff's Trademark, without authorization, privilege or right.

48.     Because Defendants use Trademarks in connection with its "Nordstrom x Nike" campaign on-line and at Nordstrom's stores to market, promote and sell their "N" branded merchandise, Defendants' sales have had and will have an adverse effect upon Plaintiff's business in this District, the State of California and throughout the United States.

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

49.     Defendants' continued distribution of products, goods and merchandise under and/or in connection with Plaintiff's Trademark will cause the Trademark, intended to identify and be associated with Plaintiff, to lose its distinctive qualities and will significantly erode Plaintiff's selling power.

50.     Because Plaintiff cannot control the nature and quality of Defendants' sales of products, goods and merchandise at Nordstrom's stores and/or Defendants' on-line sales, Defendants' infringing activities have had, and will have, an adverse effect on Plaintiff's business and reputation in this District, the State of California and throughout the United States. Said acts of infringement have caused and will continue to cause irreparable injury to the Plaintiff if the Defendants are not restrained by the Court from further violation of the Plaintiff's rights, as Plaintiff has no adequate remedy at law.

51.     As a direct and proximate result of Defendants' intentional actions, Plaintiff has suffered and will continue to suffer damages in an amount presently unknown and to be determined at time of trial.

52.     As Defendant's actions have been, and continue to be, willfully committed with intent to damage Plaintiff, to usurp the market and eliminate Plaintiff as a competitor, and to confuse and deceive the public, Plaintiff is entitled to Defendant's profits, treble Plaintiff's actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. Section 11 l7(a).

## COUNT TWO
### Federal Unfair Competition and False Designation of Origin
### Against All Defendants and Does 1-10 (Collectively "Defendants")

53.     Plaintiff realleges and incorporates by reference, the full text of all the foregoing paragraphs and exhibits as though fully set forth herein.

54. Plaintiffs claim arises under Section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125 (a), for false designation of origin and false descriptions and representations in interstate commerce.

55. As stated above, Plaintiff is the owner of all rights in and to the specially designed "N" Trademarks, which is inherently distinctive and not merely functional.

56. Plaintiff has used its Trademarks on and in connection with a wide variety of products, goods, merchandise and services, including but not limited to consumer goods, sports attire and related products, casual wear, formal wear, bags, shoes, hats, underwear, socks, cosmetic products and a host of other consumer products, promotions, entertainment, advertising and events, in interstate commerce throughout the United States and indeed, worldwide.

57. Through Plaintiff's extensive on-line branding, advertising, promotional sales and merchandising activities, Plaintiff's Trademark(s) have acquired secondary meaning and value, identifying Plaintiff. Plaintiff has developed, and was continuing to develop, extensive goodwill with, and in, its Trademark which is, and was growing to be, uniquely associated with Plaintiff in the minds of the public, prior to Defendants' infringing, confusing and injurious actions.

58. Defendants have used Plaintiff's Trademark on and/or in connection with retail and online stores and the sale and offering to sell merchandise, footwear and clothing items similar to the products Plaintiff markets, promotes and sells, throughout the United States.

59. As the Infringing Conduct was conducted over the Internet, Defendants sale of, and offering to sell, merchandise is targeted to the same consumers targeted by Plaintiff in interstate commerce throughout the United States, Canada and the world.

60.     Defendants sales, and offers to sell, merchandise in Nordstrom's stores using Plaintiff's Trademark and other indicia associated with Plaintiff in their "Nordstrom x Nike" campaign is likely to cause confusion, cause mistake, or deceive consumers as to the affiliation, connection or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval by Plaintiff of Defendants' commercial activities using Plaintiff's Trademark.  Moreover, Defendants' actions of infringing upon Plaintiff's Trademark will prevent Plaintiff from firmly cementing the relationship between the Trademark and Plaintiff to ensure that it becomes inseparably viewed by the public at-large as identifying Plaintiff.

61.     Defendant's sales, and offers to sell, merchandise as a part of their "Nordstrom x Nike" campaign using Plaintiff's Trademark, and enabling Defendants to benefit unfairly from Plaintiff's Trademark, injuring Plaintiff's ability to further build and cement its reputation and grow its success, and giving Defendants "Nordstrom x Nike" campaign commercial value they would not otherwise enjoy.

62.     Prior to Defendants' infringing use of Plaintiff's Trademark in connection with the Infringing Conduct, Defendants were aware of Plaintiff's on-line sales activities, and was aware that Plaintiff was using its specially designed "N" Trademark to brand all of its products, goods, merchandise and services which Plaintiff offered and sold throughout the United States and the world. Accordingly, Defendants use of Plaintiff's Trademarks was intentional willful and with total disregard for Plaintiff's rights in its Trademark.

63.     Defendants' sales, and offers to sell merchandise online through the Infringing Conduct and in Nordstrom's stores with their "Nordstrom x Nike" campaign, was, and is, intentionally designed to deceive and has deceived public consumers and prospective customers into believing that the Infringing Conduct was

authorized, licensed or approved, associated with, or otherwise connected to Plaintiff when, in fact, it is not.

64.     As a direct and proximate result of Defendants' actions, the public is likely to be confused and has been confused as to believe that Defendants' "Nordstrom x Nike" campaign, merchandise, products, goods and services are associated with Plaintiff, when, in truth and in fact, they are not.

65.     As a direct and proximate result of Defendants' actions, Plaintiff is entitled to injunctive relief enjoining and restraining Defendants' from use of Plaintiff's Trademarks throughout the United States.

66.     Because Plaintiff cannot control the nature and quality of Defendants' sales of products, goods and merchandise at Nordstrom's stores and/or Defendants' on-line sales, Defendants' infringing activities have had, and will have, an adverse effect on Plaintiff's business and reputation in this District, the State of California and throughout the United States.

67.     Said acts of infringement have caused, and will continue to cause, irreparable injury to the Plaintiff if the Defendants are not restrained by the Court from further violation of the Plaintiff's rights, as Plaintiff has no adequate remedy at law.

68.     As a direct and proximate result of Defendants' intentional actions, Plaintiff has suffered and will continue to suffer damages in an amount presently unknown and to be determined at time of trial.

69.     As Defendant's actions have been, and continue to be, willfully committed with intent to damage Plaintiff, to usurp the market and eliminate Plaintiff as a competitor, and to confuse and deceive the public, Plaintiff is entitled to Defendant's profits, treble Plaintiff's actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. Section 11 l7(a).

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

## COUNT THREE
### Federal Trademark Dilution
### Against All Defendants and Does 1-10 (Collectively "Defendants")

70.     Plaintiff realleges and incorporates by reference the full text of all the foregoing paragraphs and exhibits as though fully set forth herein.

71.     Plaintiffs claim arises under Section 43(c) of the Lanham Act, 15 U.S.C. Sec. 1125 (c).

72.     As stated above, Plaintiff is the owner of all rights in its specially designed "N" Trademark, which is inherently distinctive and not merely functional. Plaintiff has used its Trademarks on and in connection with a wide variety of products, goods, merchandise and services, including but not limited to consumer goods, sports attire and related products, casual wear, formal wear, bags, shoes, hats, underwear, socks, cosmetic products and a host of other consumer products, promotions, entertainment, advertising and events, in interstate commerce throughout the United States and indeed, worldwide.

73.     Through Plaintiff's extensive on-line branding, advertising, promotional sales and merchandising activities, Plaintiff's Trademark(s) have acquired secondary meaning and value, identifying Plaintiff. Plaintiff has developed, and was continuing to develop, extensive goodwill with, and in, its Trademark which is, and was growing to be, uniquely associated with Plaintiff in the minds of the Public, prior to Defendants' infringing, confusing and injurious actions.

74.     Defendants have used Plaintiff's Trademark on and/or in connection with retail and online stores and the sale and offering to sell merchandise, footwear and clothing items similar to the products Plaintiff markets, promotes and sells, throughout the United States.

75.      As the Infringing Conduct was conducted over the Internet, Defendants sale of, and offering to sell, merchandise is targeted to the same

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

consumers targeted by Plaintiff in interstate commerce throughout the United States, Canada and the world.

76.     Defendants sales, and offers to sell, merchandise in Nordstrom's stores using Plaintiff's Trademark and other indicia associated with Plaintiff in their "Nordstrom x Nike"  campaign causes, and is likely to cause, confusion, mistake and/or deception for consumers as to the affiliation, connection and/or relationship between, or association of, Defendants with Plaintiff, or as to the origin, sponsorship, or approval by Plaintiff of Defendants' commercial activities using Plaintiff's Trademark.  Moreover, Defendants' actions of infringing upon Plaintiff's Trademark will prevent Plaintiff from firmly cementing the identifying relationship between its protected Trademark and Plaintiff as a business entity, to ensure that the Trademark becomes inseparably viewed by the public at-large as identifying Plaintiff, and not Nordstrom and/or Nike.

77.  Defendant's sales, and offers to sell, merchandise as a part of their "Nordstrom x Nike" campaign using Plaintiff's Trademark, and enabling Defendants to benefit unfairly from Plaintiff's Trademark, injuring Plaintiff's ability to further build and cement its reputation and grow its success, and giving Defendants "Nordstrom x Nike" campaign commercial value they would not otherwise enjoy.

78.     Defendants' sales, and offers to sell, merchandise online through the Infringing Conduct and in Nordstrom's stores with their "Nordstrom x Nike" campaign, was, and is, intentionally designed to deceive and has deceived public consumers and prospective customers into believing that the Infringing Conduct was authorized, licensed or approved, associated with, or otherwise connected to Plaintiff when, in fact, it is not.

79.     Defendants' above-described infringing uses of Plaintiff's "N" Trademark began after Plaintiff began using it and established the viability and popularity of the Trademark and the business model in the public consumer market.

80.     Defendants' above-described infringing uses cause actual dilution of Plaintiff's Trademark value to Plaintiff, and prevents Plaintiff from growing its Trademark's value, and Defendants infringing actions are likely to lessen the capacity of the Plaintiff to fully commercially exploit its Trademark to brand and market its wide range of consumer products, goods, merchandise and services with distinction and identity as Plaintiff's products, goods, merchandise and services as defined in 15 U.S.C. Sec. 1127.

81.     As a direct and proximate result of Defendants' actions, the public is likely to be confused and has been confused as to believe that Defendants' "Nordstrom x Nike" campaign, merchandise, products, goods and services are associated with Plaintiff, when, in truth and in fact, they are not.

82.     As Defendants' actions have been, and continue to be, willfully committed with intent to damage Plaintiff, to usurp the market and eliminate Plaintiff as a competitor, and to confuse and deceive the public, Plaintiff is entitled to Defendants' profits, treble Plaintiff's actual damages, an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. Section 11 l7(a).

## COUNT FOUR
### Common Law Trademark Infringement
### Against All Defendants and Does 1-10 (Collectively "Defendants")

83.     Plaintiff realleges and incorporates by reference, the full text of all the foregoing paragraphs and exhibits as though fully set forth herein.

84.     Plaintiffs claim arises under the common law of California for trademark and trade dress infringement.

85.     The use by Defendants of Plaintiff's Trademark in connection with the Infringing Conduct is in violation of Plaintiff's common law rights to the exclusive use of its specially designed "N" Trademark throughout California and the United States.

86.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff is entitled to injunctive relief enjoining and restraining Defendants' from use of the Trademarks throughout the United States.

87.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff has suffered and will continue to suffer lost profits and damage to its on-line sales business, reputation and goodwill in this District, the State of California and throughout the United States, for which there is no adequate remedy at law.

88.     As a direct and proximate result of Defendants' infringing conduct. Plaintiff has been injured and will continue to suffer damages in this District, the State of California and throughout the United States in an amount presently unknown and to be determined at trial.

## COUNT FIVE
### Common Law Unfair Competition
### Against All Defendants and Does 1-10 (Collectively "Defendants")

89.     Plaintiff realleges and incorporates by reference, the full text of all the foregoing paragraphs and exhibits as though fully set forth herein.

90.     Plaintiff's claim arises under California Business & Professions Code Sec. 1700 for unfair competition.

91.     Plaintiff is informed and believes that with full knowledge of the existence and fame of Plaintiff's specially designed "N" Trademark, Defendants have attempted to trade upon goodwill and fame of Plaintiff's Trademark and to claim it as their own to advance and facilitate the success of their "Nordstrom x

Nike" joint-venture, and have misled and will mislead the public into assuming a connection or association between Defendants and Plaintiff.

92.     Defendants use of Plaintiff's Trademark has caused and/or is likely to cause damage to Plaintiff in this District, the State of California and throughout the United States by deceptively usurping Plaintiff's sales opportunities, diminishing Plaintiff in the competitive marketplace, tarnishing the valuable reputation and goodwill Plaintiff has established in its Trademark and diluting the distinctiveness of the Trademark as the identifier of Plaintiff and Plaintiff's products, goods, merchandise and services.

93.     The aforesaid acts by Defendants in falsely suggesting a connection with Plaintiff, in tarnishing the reputation of Plaintiff and its products, and in diluting the distinctive nature of Plaintiff's Trademark constitute acts of unfair competition in violation of Cal. Bus. & Prof. Code $ 17200 and the common law.

94.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff is entitled to injunctive relief enjoining and restraining Defendants from use of the Trademarks throughout the United States.

95.     As a direct and proximate result of the willful and wanton acts of Defendants, Plaintiff has been and will continue to be irreparably injured in this District, the State of California and throughout the United States, with no adequate remedy at law.

**COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**

1     **WHEREFORE**, Plaintiff respectfully prays for Judgment to be entered

2  against Defendants as follows:

3

4     1. That the Court enter a judgment against each Defendant that each

5  Defendant has willfully infringed Plaintiff's rights in the common law and federally

6  registered Trademarks referenced herein.

7     2. That the Court issue temporary, preliminary and permanent injunctive

8  relief against each Defendant, their officers, agents, representatives, servants,

9  employees, attorneys, successors and assigns, and all others in active concert and/or

10  participating with Defendants, so that all such persons be enjoined and restrained

11  from using Plaintiff's Trademark and any colorable imitations of Plaintiff's

12  Trademark on and in connection with the marketing, promotion, distribution, and or

13  sale of any goods and/or services.

14     3. Directing that the Defendants deliver for destruction all Infringing

15  Merchandise including goods, labels, signs, prints, packages, dyes, wrappers,

16  receptacles, and advertisements in their possession or under their control bearing

17  Plaintiff's Trademark, including, but not limited to, any simulation, reproduction,

18  counterfeit, copy, or colorable imitation thereof, and all plates, molds,

19  heat transfers, screens, matrices, and other means of making the same.

20     4. For an award of actual damages Plaintiff sustained as a result of

21  Defendants' acts of infringement, unfair competition and dilution of the Trademarks

22  pursuant to 15 U.S.C. Sec.1117(a) and the common law, and a trebling of such

23  damages.

24     5. For an order requiring Defendants to account for and pay over to

25  Plaintiff all gain, profits and advantages derived by Defendants, and each of them

26  individually and collectively, from their acts of infringement, unfair competition and

27  dilution of the Trademarks pursuant to 15 U.S.C. Sec.1117(a) and the common law.

28  <sub>M</sub>

1

2      6. That the Court order each Defendant to pay Plaintiff both the costs of this

3   suit and the reasonable attorney's fees incurred by Plaintiff in investigating and

4   prosecuting this action.

5      7. That the Court award Plaintiff on his state law claims compensatory

6   damages in an amount to be determined at trial.

7      8. That the Court award Plaintiff punitive damages in such amounts as

8   may be determined at trial.

9      9. That the Court award Plaintiff prejudgment interest according to law.

10     10. That the Court grants to Plaintiff such other and additional relief as is

11  just and proper.

12  DATED: January 14, 2021      LAW OFFICES OF ALVIN L. PITTMAN

13

14

15                              By:   /s/ Alvin L. Pittman

16                                    ALVIN L. PITTMAN, ESQ.
                                      Attorneys for Plaintiff

17

18

19                      **DEMAND FOR JURY TRIAL**

20

       Plaintiff demands a trial by jury on all issues so triable.

21

22  DATED: January 14, 2021      LAW OFFICES OF ALVIN L. PITTMAN

23

24

25                              By:   /s/ Alvin L. Pittman

26                                    ALVIN L. PITTMAN, ESQ.
                                      Attorneys for Plaintiff

27

28  M                                    21
                **COMPLAINT  FOR DAMAGES & DEMAND FOR JURY TRIAL**