JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.T.A.A. (NO TALK ALL ACTION), INC.; RYAN ROBINSON, An Individual,<br><br>  Plaintiffs,<br><br> vs.<br><br>NORDSTROM, INC.; NIKE, INC., and DOES 1 through 10, Inclusive<br><br>  Defendants. | Case No. 2:21-cv-00398 DDP-AGRx<br><br>**ORDER GRANTING MOTION [133] [136] FOR TERMINATING SANCTIONS** |
| NIKE, INC., an Oregon corporation,<br><br>Counterclaimant,<br><br>v.<br><br>N.T.A.A. (NO TALK ALL ACTION), INC., a Canadian corporation; RYAN ROBINSON, an Individual,<br><br>Counter-Defendants. | |

Presently before the Court is Defendant Nike's second Motion for Terminating Sanctions, Dkt. 133 ("*Mot.*"), joined by Defendant Nordstrom, Dkt. 136. Plaintiffs oppose. Dkt. 138 ("*Opp.*"). Having considered the parties' submissions and heard oral argument, the court adopts the following order.

///

I. BACKGROUND

Plaintiffs Ryan Robinson and N.T.A.A. (No Talk All Action) (collectively "NTAA" or "Plaintiffs") assert claims of Lanham Act trademark infringement and unfair competition, common law trademark infringement, and unfair competition under the California Business and Professions Code. *See generally* First Amended Complaint, Dkt. 22 ("FAC"). NTAA claims that Nike and Nordstrom infringed on NTAA's stylized "N" design when they launched a "Nordstrom x Nike" collaboration in September 2016. *See generally* FAC.

On April 18, 2022, the parties appeared at a discovery conference before the Magistrate Judge and Plaintiffs were ordered to confirm by April 27, 2022 that all responsive, nonprivileged documents contained in email and social media accounts had been produced. *See* Dkt. 46. Following the discovery conference, Robinson was deposed, and it was revealed that he had been self-conducting the search for responsive documents without assistance, and that a search had not been conducted on several relevant devices. *See* Declaration of Tamar Y. Duvdevani ("*Duvdevani Decl.*") ¶ 3, Ex. 2 at 66:25–67:8, 245:4–18; ¶ 4, Ex. 3 at 255:19–258:6, 302:10–307:11, 319:13–325:9. Plaintiffs subsequently produced additional ESI to Defendants but, believing this production to be inadequate, Nike moved for sanctions for violating the April 18, 2022 discovery order. *See generally* Dkt. 62. Following a hearing, the court took the matter under submission. Dkt. 72.

On August 29, 2022, while that motion for sanctions was still pending before the Magistrate Judge, Nike moved for terminating sanctions alleging that Plaintiffs fabricated UPS invoices and tax returns and misrepresented Robinson's relationship with Clover Dallas. *See* Dkt 83. The Court denied issuing terminating sanctions finding that Nike had not established beyond a preponderance of the evidence that the UPS invoices and tax returns were fraudulent, and that Plaintiffs had not been adequately warned of the potential for terminating sanctions. *See* Dkt. 106 ("*Sanctions Order*") at 13. However,

2

the Court found that monetary sanctions were appropriate for Robinson's misrepresentations regarding his relationship with Clover Dallas. *See id.* Robinson had repeatedly represented that his relationship with Clover Dallas was "only a business relationship" and Dallas stated in a declaration that she met Robinson through another individual. *See id.* at 11-12. It was established, however, that Dallas, also known as Judy Robinson, was in fact Robinson's mother. *See id.* at 12-13. Despite having ample opportunity to clarify their relationship, Robinson "misled by omission" and the Court found that "Robinson's relationship with Dallas is significant to Plaintiffs' ability to prove sale of NTAA-branded products during the priority period." *Id.*

On February 17, 2023, the Magistrate Judge issued an order denying in part and granting in part Nike's other motion for sanctions. *See* Dkt. 107 ("*Feb. Discovery Order*"). The order permitted Nike to retain a professional ESI vendor, to be selected by agreement of the parties, and ordered Plaintiffs to cooperate with the ESI investigation. *See id.* Shortly thereafter, Nike retained, with Plaintiffs' approval, iDiscovery Services ("iDS") as the professional ESI vendor. *See* Dkt. 108. The parties scheduled inspection of Robinson's devices for March 13, 2023. *See* Declaration of Daniel L. Regard II ("*iDS Decl.*") ¶ 1; *see also Mot.* at 4:17.

Four days prior to the scheduled ESI investigation, on March 9, 2023, Robinson filed a police report stating that the devices to be searched, along with other items, were stolen from his car while in a Walmart parking lot on March 8, 2023 between 9:35-10:24 P.M. *See Duvdevani Decl.* ¶ 14, Ex. 13. Despite the unavailability of Robinson's devices, iDS proceeded with ESI investigation as scheduled on March 13, 2023 and was provided with Robinson's new phone and various account logins. *See iDS Decl.* ¶ 1. Through its investigation, iDS determined that following the February 17, 2023 discovery order, Robinson deleted numerous emails, files, messages, and internet browsing history. *See generally iDS Decl.* Further, iDS found that certain accounts contained no communication history despite evidence that communications had taken place through those account

3

since the onset of litigation. *See id.* at ¶ 132. iDS also concluded that the theft of Robinson's devices was likely staged. *See id.* at ¶ 17.

Nike now moves for terminating sanctions based on iDS's findings. *See Mot*. at 18–19. Nordstrom joins in the motion. *See* Dkt. 136. Nike further requests an award of fees and expenses associated with bringing the motion and conducting the underlying ESI investigation. *See Mot.* at 19.

II.     LEGAL STANDARD

The actions underlying Nike's motion for sanctions all occurred during discovery. Thus, sanctions are available both under Federal Rule of Civil Procedure 37 and the court's "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser–Busch v. Nat. Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995)). 1995)); Fed. R. Civ. P. 37(b); (e).

Under Rule 37(b), sanctions may be imposed when a party "fails to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b). Rule 37(e) authorizes sanctions when electronically stored information "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replace through additional discovery." Fed. R. Civ. P. 37(e). Dismissal requires a finding of bad faith or willfulness. *Leon*, 464 F.3d at 958.

In assessing the appropriateness of terminating sanctions, courts must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (quoting *Malone v. United States Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)). Courts "need not make explicit findings regarding each of these factors" but "a finding of

willfulness, fault, or bad faith is required," and a court must seriously consider the availability of "less severe alternatives."  *Leon*, 464 F.3d at 958.

The Ninth Circuit has not ruled on the standard of proof that the moving party must satisfy, but the general consensus appears to be the preponderance of the evidence standard. *See WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020) (collecting cases). This Court applies the preponderance of the evidence standard.

III.    DISCUSSION

    A.    Terminating Sanctions

Defendants ask this Court, yet again, to issue terminating sanctions and monetary sanctions based upon Plaintiffs' alleged discovery misconduct. *See generally Mot.* Defendants have established that Plaintiffs remained undeterred from engaging in discovery misconduct by the Court's previous order of monetary sanctions. *See generally Mot.* Despite a duty to preserve ESI, an order requiring cooperation in the ESI investigation, and the knowledge that terminating sanctions may be issued for discovery misconduct, Plaintiffs persisted in a pattern of destruction and deception that prevents Defendants from defending themselves and undermines the Court's truth-finding function.

        i.    Willfulness, Bad Faith, or Fault

A terminating sanction is a "very severe remedy."  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). However, terminating sanctions are warranted when "there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006). "Providing false or incomplete information during a deposition or in response to a discovery constitutes the sort of willfulness, bad faith, or fault required for dismissal." *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013). The destruction of evidence

5

constitutes willful spoliation when the party has "some notice that the documents were *potentially* relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959. (citation omitted). Discovery violations caused by circumstances that were not beyond the party's control support dismissal. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949 (9th Cir. 1993) (describing the test for "willfulness, bad faith, or fault necessary to justify dismissal") (internal quotation omitted).

Considering all the circumstances, the court finds that Robinson intentionally and willfully destroyed, attempted to destroy, or otherwise made undiscoverable ESI in bad faith. Viewed wholistically, Robinson's conduct reflects a pattern of deception that prevents the Court from ensuring this case can be decided based upon the true facts.

The Court finds Robinson's version of events leading to the unavailability of his devices as provided in his declaration completely incredible. Robinson alleges that, just days before the ESI inspection was to take place, the devices to be inspected were stolen out from his car on March 8, 2023. *See* Declaration of Ryan Robinson ("*Robinson Decl.*") ¶ 6. Robinson's prior misrepresentations regarding the nature of his relationship with Clover Dallas indicate that Robinson is not credible. *See Sanctions Order*. Further, the ESI investigation uncovered information that indicates the alleged theft was likely staged to prevent search of Robinson's devices for relevant ESI.

First, the "Find My" location tracking feature on both Robinson's iPhone 13 Max and his iPhone 7 Plus was disabled in the early morning hours of March 8, 2023, the same day of the alleged theft. *See iDS Decl.* ¶ 26–27. Apple sent an email confirming the disabling of this feature for both devices to Robinson's email, and both of those emails were subsequently deleted. *See id.* at ¶ 26. Had the tracking feature not been deactivated, Robinson's device could have potentially been found. The disabling of the this feature the morning of the alleged theft indicates that such theft was likely staged. And the emails were likely deleted to cover up the suspicious timing of the disabling of the "Find My" tracking feature. Second, the iPhone XR that Robinson alleges he purchased after the

6

theft to replace his "stolen" phone began tracking health data prior to the alleged theft. *See Robinson Decl.* ¶ 7; *see iDS Decl.* ¶ 31–32. This would only be possible if Robinson purchased the iPhone XR prior to the theft indicating he anticipated the need for a new phone.[1] Lastly, the ESI investigation revealed widespread spoliation and attempted spoliation prior to the alleged theft of these devices, as discussed below. *See id.* at ¶ 132. Taken together, these circumstances indicate that the alleged theft was the culmination of a pattern of deception and destruction, and likely staged.

The ESI investigation revealed the possible existence of numerous other devices, accounts, user names, and user IDs that likely belong to Robinson but were not previously disclosed, including the iPhone 7 Plus. *See id.* at ¶ 79-83, 95–102. Robinson alleges that the iPhone 7 Plus was borrowed from Lyndon Bonnick, Robinson's ESI monitor. *See Robinson Decl.* ¶ 14; *see also* Declaration of Lyndon Bonnick ("*Bonnick Decl.*") ¶ 2. However, the iPhone 7 is named "RY's Phone" and the simultaneous deactivation of the "Find My" feature on both devices suggests they were both controlled by the same individual. *See iDS Decl.* ¶ 26, 30. While Plaintiffs attempt to explain away the name of the iPhone 7 but noting that one can change the name of an iPhone, it seems highly unlikely an individual would go through the trouble of renaming a borrowed phone. Further, iDS found recovered notes contained undisclosed account login information,

---

[1] Statements by Robinson's ESI monitor, Lyndon Bonnick, in his submitted declaration also support the conclusion that Robinson purchased the iPhone XR prior to the alleged theft. Bonnick alleges the unavailability of WhatsApp message history prior to March 8, 2023, discussed further below, is due to WhatsApp failing to back up messages from Robinson's previous phones. *See* Declaration of Lyndon Bonnick ¶ 4. However, the WhatsApp message history contains messages sent prior to the alleged theft which, if Bonnick's assertion is true, then Robinson must have purchased the iPhone XR prior to the alleged theft. *See iDS Decl.* ¶ 88.

7

many of which use the same password Robinson uses for his disclosed accounts. *See id.* at ¶ 79–83, Ex. F. The non-disclosure of certain devices and accounts indicates an attempt to prevent discovery of all relevant information through deceit and misrepresentations similar to Robinson's discovery tactics regarding his relationship with Clover Dallas.

      Robinson's email accounts reflect widespread attempted spoliation of ESI. iDS recovered, from two email accounts, more than 4,500 emails that were deleted after the February 17, 2023 discovery order. See *id.* at ¶¶ 49–50, 53–54. The deleted emails had original send dates from February 2010 to March 2023. *See id.* at ¶¶ 50–54. Many of these emails were "double deleted," meaning after they were deleted and placed into the "Deleted Items" folder, they were again deleted from that folder which typically has a 30-day recovery period. *See id.* at ¶ 49.

      Robinson's explanations for these deletions are unavailing. Robinson does not deny that these messages were deleted from his email accounts. *See generally Opp.; Robinson Decl*. Instead, he claims that the deleted emails were "random[ly] clear[ed]" by Robinson's ESI monitor, Lyndon Bonnick. *See Opp.* at 3:1–3; *Robinson Decl.* ¶ 13; *Bonnick Decl.* ¶¶ 2–3, 6, 11. However, as Plaintiffs' ESI monitor, Bonnick's actions would be well within Plaintiffs' control. Robinson and Bonnick also allege that these emails were innocently deleted to create storage space. *See Robinson Decl.* ¶ 13; *Bonnick Decl.* ¶¶ 2-3, 6, 11. To support this claim, Robinson and Bonnick provided two screenshots of Robinson's email application that allegedly show notifications that more storage space is required as well as an email notifying the sender that the email will not send due to a lack of storage space for Robinson's email account. *See Robinson Decl.* ¶13, Ex. 13; *Bonnick Decl.* ¶ 2, Ex. 1. However, the screenshots also show emails that indicate that the screenshots were taken on April 8, 2023 and June 2, 2023 and the email provided was sent on July 17, 2023. *See Robinson Decl.* ¶13, Ex. 13; *Bonnick Decl.* ¶ 2, Ex. 1. Therefore, Plaintiffs have not shown a lack of storage space when the emails at issue were deleted, in February and March 2023. Further, even if Robinson needed more storage space on his devices during the relevant

8

time period, this does not explain the double deleting of the emails. *See Mot.* at 4:17–19. More importantly, lack of storage space is simply not an excuse for deleting ESI that a party is under a duty to preserve. Instead, the double deletion of thousands of emails between the February 17, 2023 discovery order and the March 13, 2023 ESI investigation indicates a deliberate attempt to spoliate potentially relevant documents with the intent to impede discovery.

Robinson also spoliated or attempted to spoliate thousands of potentially responsive files on his devices. Through the ESI investigation, iDS discovered that Robinson deleted 11,038 photo and video files between February 14, 2023 and March 12, 2023. *See iDS Decl.* ¶¶ 58–59. Only 372 of those files, roughly 3.4%, were recovered. *See id.* at ¶ 60. Further, iDS found that Robinson modified or deleted a substantial number of "notes" and "contacts" contained on his devices. *See id.* at ¶¶ 69–77. Though iDS was able to recover 304 of the deleted notes, iDS was unable to recover any notes potentially deleted prior to February 14, 2023, as recently deleted notes are only accessible through iCloud for 30 days. *See id.* at ¶¶ 75–77. Additionally, the modifications made to hundreds of notes and dozens of contacts are not recoverable. *See id.* at ¶¶ 70, 72. These modifications are pertinent as the recovered notes contained passwords for previously undisclosed accounts and iDS found numerous contacts in Robinson's iCloud account that are likely relevant Robinson's priority claims. *See id.* at ¶ 73, Ex. B; ¶ 81, Ex. F.

After searching Robinson's social media and messaging applications, iDS uncovered more spoliation. Robinson's Facebook account contained no messages between Robinson and Judy Robinson, his mother who is also known as Clover Dallas. *See id.* at ¶ 86. However, iDS recovered 20 emails from Facebook stating "Judy Robinson sent you a message" between November 2018 and September 2022 that were sent to Robinson's email address and then deleted. *See id.* at ¶¶ 84–86. Robinson does not provide an explanation for how or why the Facebook messages between him and his mother were deleted. *See generally Robinson Decl.* Likewise, Robinson's WhatsApp

9

message history contained no messages prior to March 8, 2023, despite evidence that he frequently directed conversations to the WhatsApp platform. *See id.* at ¶ 88–94, 82 n. 33. Robinson alleges that his WhatsApp messages did not back up to his iCloud due to a WhatsApp internal error and technical difficulties. *See Robinson Decl.* ¶ 16. Robinson provides no support for that claim beyond self-serving statements. Further, the application download and installation history for Robinson's iPhone suggests he frequently used the messaging application Signal. *See iDS Decl.* ¶ 67. However, due to the ephemeral nature of the Signal messaging application, no messages were recoverable. *See id.* at ¶ 46. Had Robinson provided his devices for inspection, the WhatsApp and Signal messages may have been recoverable. *See id.* at ¶ 43. Having already found that Robinson is not credible, there is nothing to indicate that the lack of message history from various social media and messaging applications reflects anything other than a deliberate attempt by Robinson to conceal the contents of those messages from Defendants and the Court.

The spoliation of Robinson's Facebook messages, messaging app history, and photos and videos, as well as the attempted spoliation of thousands of other potentially relevant files and emails, leads the Court to the conclusion that Robinson willfully and in bad faith engaged in campaign of ESI destruction in attempt to prevent their discovery. Several of the recovered files Robinson attempted to spoliate contained relevant and responsive information. A central issue of this litigation is Plaintiffs' priority use of the specialized "N" prior to the Nordstom x. Nike release in 2016. Some of the recovered information has direct bearing on the credibility of Plaintiffs' priority use claim. Certain recovered photos have metadata that show those photos were taken in Toronto on the same date certain U.S. sales were allegedly made by Robinson. *See id.* at ¶¶ 119–125. Further, a recovered email receipt indicates Robinson was at a hotel in Toronto on the date of other alleged U.S. sales. *See id.* at ¶¶ 126–131. The ESI investigation also recovered a deleted email in which Robinson indicated NTAA branded clothing was on in the way

10

in the Spring of 2016. *See Duvdevani Decl.* ¶ 32, Ex. 31. Though these files were ultimately recovered, the deletion of those files reflects an intent to prevent their discovery and obstruct Defendants' ability to defend themselves in this litigation.

Robinson's conduct raises serious doubts that all relevant information has been produced to Defendants and that the Court will be able to decide this case on the true facts. Robinson has willfully and in bad faith obstructed discovery through a pattern of deception and deletion making terminating sanctions warranted.

ii. Efficacy of Lesser Sanctions

Before issuing terminating sanctions, courts must consider the efficacy of less severe sanctions and whether the party was warned of the possibility of terminating sanctions. *See Anheuser-Busch*, 69 F.3d at 352. However, an explicit warning of the possibility of terminating sanctions is not always necessary. *Id.* at 353. Terminating sanctions are appropriate "where the court anticipates deceptive misconduct." *Id.; see also Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1116–17 (9th Cir. 2004).

As discussed above, Robinson's conduct reflects a pattern of deception that was undeterred by prior monetary sanctions. Robinson was aware that terminating sanctions may be imposed for discovery misconduct as this is Nike's second motion for terminating sanctions based on discovery misconduct. Given that Robinson has already had monetary sanctions imposed and was aware of the potential for terminating sanctions, yet remained undeterred in his deception, the Court finds that lesser sanctions would be insufficient to deter Robinson from engaging in further abusive tactics.

iii. Prejudice

Defendants have clearly been prejudiced by Robinson's conduct. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Some of the spoliated evidence was not capable of being restored or replaced. *See iDS Decl.* ¶¶ 58–60, 70, 72, 84, 93–94. Without

11

access to Robinson's "stolen" devices and the spoliated ESI, Defendants' ability to defend against Robinson's claims has been obstructed.

The burden is on the spoliating party to establish a lack of prejudice to the non-spoliating party. *See Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1037 (C.D. Cal. 2018). However, Plaintiffs make no attempt to argue that Defendants were not prejudiced by the loss of potentially relevant information. *See generally Opp.* Instead, Plaintiffs argue that preserving ESI is often impossible, without providing any reasons why the preservation of the spoliated ESI would have been impossible in this case. *See id.* at 4:3–6. Thus, the Court finds that Defendants have suffered prejudice.

### iv. Conclusion

While terminating sanctions are an extreme remedy and the Court would always prefer to dispose of a case on the merits, the Court is convinced that Robinson's conduct has so impeded the Court's ability to assess all the facts and rightfully decide the case that such an extreme remedy is necessary. Though the Court applies the preponderance of the evidence standard, Nike has provided sufficient evidence of Robinson's misconduct that even under a clear and convincing evidence standard terminating sanctions would be warranted in this case. Thus, the Court imposes terminating sanctions pursuant to Rule 37 and its inherent authority.

### B. Monetary Sanctions

Defendants further request an award of attorneys' fees, expert fees, consultant fees, and costs incurred in connection with the ESI investigation and bringing this motion. *See Mot.* 19:17–25. "Monetary sanctions may be imposed where one party has wrongfully destroyed evidence." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1078. The Court may award attorneys' fees against a party who has acted in bad faith under its inherent authority. Rule 37 also provides the means for a court to order a disobedient or spoliating party to pay the reasonable expenses of the other party. *See* Fed.

R. Civ. P. 37(b)(2)(C); (e)(2); *see also RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 533 (C.D. Cal. 2022).

Monetary sanctions are appropriate in this instance, where the Plaintiffs have acted in bad faith. Thus, the Defendants are entitled to fees and costs *reasonably* incurred in connection with this matter. Accordingly, Defendants may submit a supplemental request for a specific amount of fees supported by evidence itemizing such expenses for the Court's consideration.

IV. **CONCLUSION**

For the foregoing reason, the Court **GRANTS** Defendants' Motion for Terminating Sanctions. Counts 1-4 of Plaintiffs Amended Complaint are dismissed with prejudice. Defendants may file a supplemental request for expenses and fees associated with the motion for the Court's consideration.

**IT IS SO ORDERED.**

Dated:  November 3, 2023

_____
HONORABLE DEAN D. PREGERSON
UNITED STATES DISTRICT COURT