'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.T.A.A. (NO TALK ALL ACTION), INC.; RYAN ROBINSON, An Individual,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>NORDSTROM, INC.; NIKE, INC., and DOES 1 through 10, Inclusive<br><br>　　　　　Defendants. | Case No. 2:21-cv-00398 DDP-AGRx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION [163] FOR ATTORNEY FEES AND COSTS UNDER THE LANHAM ACT AND 28 U.S.C. § 1927** |
| NIKE, INC., an Oregon corporation,<br><br>Counterclaimant,<br><br>v.<br><br>N.T.A.A. (NO TALK ALL ACTION), INC., a Canadian corporation; RYAN ROBINSON, an Individual,<br><br>Counter-Defendants. | |

Presently before the Court is Defendant Nike's Motion for Attorneys' Fees and Costs Under the Lanham Act and 28 U.S.C. § 1927.  Dkt. 163 ("*Mot.*").  Former counsel of record Alvin Pittman ("Pittman") opposed the Motion for Fees and Costs under 28 U.S.C. § 1927.  Dkt. 173 ("*Opp.*").  Counsel of record Lorenzo Williams ("Williams") filed a declaration in opposition to the motion for fees under 28 U.S.C. § 1927.[1]  Dkt. 174, Declaration of Lorenzo Williams ("*Williams Decl.*").  Having considered the parties' submissions, the court adopts the following order.

I.     BACKGROUND

Plaintiffs Ryan Robinson ("Robinson") and N.T.A.A. (No Talk All Action) (collectively "NTAA" or "Plaintiffs") asserted claims of Lanham Act trademark infringement and unfair competition, common law trademark infringement, and unfair competition under the California Business and Professions Code.  *See generally* First Amended Complaint, Dkt. 22 ("FAC").  Plaintiffs claimed that Nike and Nordstrom infringed on NTAA's stylized "N" design when they launched a "Nordstrom x Nike" collaboration in September 2016.  *See generally id*.

On April 18, 2022, the parties appeared at a discovery conference before the Magistrate Judge and Plaintiffs were ordered to confirm by April 27, 2022 that all responsive, nonprivileged documents contained in email and social media accounts had been produced.  *See* Dkt. 46.  Plaintiffs subsequently produced additional ESI to Defendants but, believing this production to be inadequate, Nike moved for sanctions for violating the April 18, 2022 discovery order.  *See generally* Dkt. 62.  Following a hearing, the court took the matter under submission.  Dkt. 72.

On August 29, 2022, while that motion for sanctions was still pending before the Magistrate Judge, Nike moved for terminating sanctions alleging that Plaintiffs

---

[1] Despite being counsel of record, Williams did not file an opposition on Plaintiffs' behalf challenging the basis for or amount of fees sought under the Lanham Act.  Instead, Williams only opposed fees sought against him personally and did so, it should be noted, in an improper format.  *See generally Williams Decl.*

2

fabricated UPS invoices and tax returns and misrepresented Robinson's relationship with Clover Dallas. *See* Dkt 83. The Court denied issuing terminating sanctions finding that Nike had not established beyond a preponderance of the evidence that the UPS invoices and tax returns were fraudulent, and that Plaintiffs had not been provided adequate notice of the potential for terminating sanctions. *See* Dkt. 106 at 13. However, the Court found that monetary sanctions were appropriate for Robinson's misrepresentations regarding his relationship with Clover Dallas. *See id.* Robinson had repeatedly represented that his relationship with Clover Dallas was "only a business relationship" and Dallas stated in a declaration that she met Robinson through another individual. *See id.* at 11-12. It was established, however, that Dallas, also known as Judy Robinson, was in fact Robinson's mother. *See id.* at 12-13. Despite having ample opportunity to clarify their relationship, Robinson "misled by omission" and the Court found that "Robinson's relationship with Dallas [was] significant to Plaintiffs' ability to prove sale of NTAA-branded products during the priority period." *Id.* The Court ultimately ordered Plaintiffs to pay $107,349.96 in attorneys' fees as a sanction for this discovery misconduct. Dkt. 143.

On February 17, 2023, the Magistrate Judge issued an order denying in part and granting in part Nike's other motion for sanctions. *See* Dkt. 107. The order permitted Nike to retain a professional ESI vendor, to be selected by agreement of the parties, and ordered Plaintiffs to cooperate with the ESI investigation. *See id.* Shortly thereafter, Nike retained, with Plaintiffs' approval, iDiscovery Services ("iDS") as the professional ESI vendor. *See* Dkt. 108. On March 9, 2023, four days prior to the scheduled ESI investigation, Robinson filed a police report stating that the devices to be searched, along with other items, were stolen from his car while in a parking lot. *See* Dkt. 153. Despite the unavailability of Robinson's devices, iDS proceeded with the ESI investigation as scheduled on March 13, 2023 and discovered numerous deleted emails, files, messages, and internet browsing history. *See generally* Dkt. 153.

On August 18, 2023, Nike, joined by Nordstrom, again moved for terminating sanctions and requested attorneys' fees related to bringing the motion. Dkts. 133, 136. The Court granted the motion and dismissed Counts 1-4 of Plaintiffs Amended Complaint. Dkt. 153. The Court found Robinson's claim that his devices were stolen days before the ESI investigation to be "completely incredible" and that the spoliation and attempted spoliation of numerous documents reflected a "pattern of deception and deletion." *Id.* at 6:11–12, 11:6–7. The Court also found monetary sanctions appropriate and allowed Defendants to file a supplemental request for fees and costs associated with the ESI investigation and bringing the motion. *Id.* at 13:3–7. On December 12, Nike filed an Application to the Clerk to Tax Costs Against Plaintiffs, Dkt. 157, and a Declaration of Tamar Y. Duvdevani requesting an award of $370, 221.46 for fees and costs related to bringing the motion for terminating sanctions and conducting the ESI investigation, Dkt. 158. Robinson filed a declaration opposing the requested fees.[2] Dkt. 178, Declaration of Ryan Robinson ("*Robinson Decl.*"). The Court's determination of appropriate sanctions in connection with the terminating sanctions motion is pending.

Nike now seeks an award of "full" attorneys' fees for all fees incurred since the inception of the case, including the prior fee award and other pending fee request amounts into a single enforceable order, against Plaintiffs under the Lanham Act totaling $1,983,684.25. *See Mot.* at 14. Nike also seeks $1,152,880.34 and $977,004.75 to be awarded against Pittman and Williams, respectively, under 28 U.S.C. § 1927. *See Mot.* at 21:13–16. These sanctions are sought "either as an alternative to awarding fees against

---

[2] It is not entirely clear which request Robinson's declaration was filed in opposition to. Plaintiffs did not initially file an opposition or response to either filing. On March 11, 2024, the Court issued a text notice, Dkt. 176, notifying Plaintiffs that they may file a response to Dkt. 158 by March 25, 2024. Plaintiffs filed the Declaration of Ryan Robinson, Dkt. 178, on March 24, 2024. The caption of the document is "Declaration of Ryan Robinson in Response to Nike Fees" indicating it was filed in response to Dkt. 158. However, the docket entry text states it is in opposition to the Application to Tax Costs Against Plaintiffs, Dkt. 157. The Court treats it as filed in opposition to Dkt. 158.

4

NTAA or joint and severally with NTAA and one another." *Mot.* at 20:4–6. Further, Nike requests $460,503.36 in expert and consultant costs from Pittman and Williams under 28 U.S.C. § 1927. *See Mot.* at 21:17–18. Plaintiffs did not file an opposition to fees sought under the Lanham Act. Pittman opposed fees sought under Section 1927. *See Opp.* Williams filed a declaration opposing fees sought against him under Section 1927. *See generally Williams Decl.*

II. LEGAL STANDARD

A. Lanham Act

Under the Lanham Act, courts may award reasonable attorney fees to the prevailing party in "exceptional" trademark cases. 15 U.S.C. § 1117(a). An exceptional case is one which "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). Courts exercise their equitable discretion to determine whether a case is exceptional considering the totality of the circumstances. *Octane Fitness*, 572 U.S. at 554. Relevant factors include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy*, 510 U.S. 517, 534 n.19 (1994) (internal quotation marks omitted)). A case may be sufficiently exceptional if it "present[s] either subjective bad faith or exceptionally meritless claims." *Id.* at 555.

B. 28 U.S.C. § 1927

Courts may require an attorney "who so multiplies the proceedings . . . unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award of fees under Section 1927 requires a "finding of subjective bad faith." *In re Keegan*

5

*Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986).

III.   DISCUSSION

   A.   Lanham Act

Nike seeks recovery of all attorneys' fees it incurred in defending against Plaintiffs claims totaling $1,983,684.25. *See Mot.* at 14:6–8. Nike argues that this case is exceptional because of the way in which it was litigated, specifically Plaintiffs' discovery misconduct. *See Mot.* at 14:12–15:24. Robinson's declaration opposed only the requested fees relating to the terminating sanctions motion, Dkt. 158, not the motion for fees under the Lanham Act. *See generally Robinson Decl.* Further, while the Court notes that the terminating sanctions fees are technically opposed, Robinson's declaration did not oppose or address the amount of fees sought by challenging the hourly rates or hours spent. *Id.* Therefore, the instant motion is unopposed.

   i.   "Exceptional" Case

Considering the totality of the circumstances, this is an exceptional case both in terms of the substantive strength of Plaintiffs' claims and the way in which it was litigated. Robinson engaged in a "pattern of deception and deletion" through misrepresentations regarding his relationship with Clover Dallas and widespread ESI spoliation. Dkt. 153 at 11:9–10. The motivation for this bad faith discovery conduct was to bolster his priority claim with fabrications while preventing the discovery of information that undercut his claim. Robinson would not have gone to such great lengths to mislead the Court and hide the truth if his claims were substantively strong. The only logical deduction that can be made from Robinson's conduct is that Plaintiffs' claims were frivolous. Further, the considerations of compensation and deterrence compel an award of fees. Defendants spent years defending against NTAA's claims and expended numerous hours uncovering Robinson's misconduct. *See generally* Dkt. 164,

Declaration of Tamar Y. Duvdevani ("*Duvdevani Decl.*") ¶ 53, Ex. 51.  And as opposed to demonstrating remorse for such misconduct, Robinson's declaration only reflects his belief that "this case was unfairly dismissed" and "Nike and Nordstrom should be the ones compensating Plaintiffs."  *Robinson Decl.* ¶¶ 3, 8; *see id.* at ¶¶ 7, 9.  Robinson has already shown that the Court's prior monetary award against him was insufficient to deter him from engaging in abusive litigation conduct.  *See* Dkt. 143; *see also* Dkt. 153 at 11:18–24.  Accordingly, the Court finds that this case is exceptional and now turns to the appropriate amount of fees to award.

                ii.        Amount of Fees

Nike alleges it is entitled to $1,983,684.25 in attorneys' fees from Plaintiffs.  Courts use the lodestar figure, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, to determine a reasonable attorneys' fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A "court's role in reviewing unopposed fee requests is a modest one."  *United States. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1109 (9th Cir. 2015) (Reinhardt, J., concurring).  However, while courts cannot "do the target's homework," for them, a court's intervention is warranted to ensure fairness, particularly considering the respective sophistication of the parties, and to uphold the integrity of the courts.  *See id.*  Thus, the Court evaluates the reasonableness of Nike's requested fees under the Lanham Act, even though unopposed.

As an initial matter, the Court must address that Nike's current motion is seeking a single award of fees that includes the previous award $107,349.96 in attorneys' fees and costs, Dkt. 143.  *See Mot.* at 14:24-28.  The prior award consisted of $43,827.15 in costs and $63,522.81 in attorneys' fees.  Dkt. 143.  Nike alleges that it has excluded from its calculation the fees the Court excluded in its prior sanctions award.  However, cross-referencing line by line the invoices submitted in connection with the prior motion and the invoices submitted in connection with this motion, it is apparent that Nike has requested repayment of fees the Court has already found duplicative and declined to

award.[3] *Compare* Dkt. 115, Declaration of Tamar Y. Duvdevani, ¶8, Exs. 1–2 with *Duvdevani Decl.* ¶53, Ex. 51.  In total, Nike is seeking $146,735.31 in fees the Court explicitly excluded in connection with the prior fee award.[4]  *See* Appendix B (calculating fees currently sought that were requested in previous motion).  Accordingly, the Court subtracts this amount from the fee request for a total of $1,836,948.94.  *See* Appendix A.

Turning to Nike's hourly rates, the Court finds such rates are reasonable.  A reasonable hourly rate is determined by the prevailing market rates in the relevant community for "similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see Gonzalez v. City of Maywood*, 729 F.3d 1196, (9th Cir. 2013).  The Court starts from the presumption that Nike's requested rates are reasonable as the rates were unopposed.  *See $28,000 in U.S. Currency*, 802 F.3d at 1106.

Further, Nike has submitted sufficient evidence, through counsel's declaration, that the requested hourly rates are reasonable in light of the size and reputation of DLA Piper and the experience and expertise of its attorneys and staff.  *See generally Duvdevani Decl.*  Duvdevani's declaration describes DLA Piper as "an international law firm that includes approximately 3,700 U.S.-based attorneys," and "nationally recognized" in "trademark, copyright, and media practice."  *Id.* at ¶ 71.  Duvdevani's declaration notes the numerous accolades the firm and individual attorneys have received in the intellectual property field.  *Id.* at ¶¶ 71, 76, 78, 79, 82.  Biographies outlining the experience and intellectual property expertise of the principal attorneys are attached to the declaration.  *Id.* at ¶¶ 76–87, Exs. 46–53.

---

[3] In calculating the hours now sought that had been previously submitted with the prior motion, the Court did not include any hours that were not sought in the pervious motion nor did the Court include any hours that Nike excluded from its' calculation (i.e. unhighlighted time entries).

[4] The Court also notes that Nike included in this request certain time entries it had chosen not to seek reimbursement for in the previous motions, such as additional attorney time to attend the hearing.

The rates sought are consistent with the prevailing market rates within the Central District of California. The requested hourly rates for partners and senior counsel who contributed to Nike's defense range from $848 to $1,364.70. *See* Appendix A; *see also Duvdevani Decl.* ¶ 96. Courts within this district have approved of such rates as reasonable for attorneys of similar experience and expertise. *See e.g., Netlist Inc. v. Samsung Elecs. Co.*, 341 F.R.D. 650, 675 (C.D. Cal. 2022) (finding rates ranging $1,160 to $1,370 for Gibson Dunn partners reasonable given size and reputation of the firm as well as the experience and expertise of the attorneys); *Hope Med. Enterprises, Inc. v. Fagrgon Compounding Serv., LLC*, No. 2:19-cv-07748, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding rates of $870 to $1,295 for King & Spaulding partners and counsel in the business torts and unfair competition fields reasonable); *AK Futures LLC v. Smoke Tokes, LLC*, No. 8:21-cv-1061, 2022 WL 3574280, at *2 (C.D. Cal. Jan. 13, 2022) (finding rate of $1,137.50 for a partner reasonable given his expertise in intellectual property). Likewise, the requested hourly rate range of $565 to $808 for associates has been found reasonable. *See e.g., Netlist Inc.*, 341 F.R.D. at 675 (finding Gibson Dunn associate rates ranging from $845 to $1,060 reasonable); *Hope Med. Enterprises*, 2022 WL 826903, at *3 (finding rates of $565 to 985 for associates at King & Spaulding reasonable); *AK Futures LLC*, 2022 WL 3574280, at *1-2 (finding rates ranging from $590.63 to $962.50 reasonable for associates). The paralegal and support staff rates are also within or only slightly above the prevailing rates. See e.g. *AK Futures LLC*, 2022 WL 3574280, at *1-2 (finding $393.75 to be a reasonable hourly rate for a paralegal with over two decades of experience); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *15 (C.D. Cal. Mar. 24, 2015) (finding support staff rates of $240 to $290 reasonable and an hourly rate of $345 for a paralegal with over two decades of experience reasonable). Thus, the Court approves of the requested hourly rates as reasonable.

However, though the hourly rates requested are reasonable, the hours expended are not. Hours not "reasonably expended" such as those that are "excessive, redundant, or otherwise unnecessary" should be excluded. A district court can reduce the number

of hours through an hour-by-hour analysis or, "when faced with a massive fee application," by making "across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *$28,000 in U.S. Currency*, 802 F.3d at 1108 (internal quotations omitted).

The billing invoices contain several instances in which time was adjusted upward for attorneys or staff without explanation. *Compare* Appendix C with *Duvdevani Decl.* ¶ 53, Ex 51. For example, one partner billed for a total of 5.72 hours of upward adjustments. *See id.* Often the individual claiming an adjustment had not done any accounted for work during that billing period, which indicates these adjustments cannot reflect salary increases or an adjustment of a previous entry. *See e.g. Duvdevani Decl.* ¶ 53, Ex. 51, Invoice # 4393628. Thus, the Court has totaled all instances of upward adjustments, and subtracted this amount of $14,873.16 from Nike's request for a new total of $1,822,075.78. *See* Appendix C.

The Court finds it is also necessary to reduce the hours by a percentage. The more than 3,000 hours Nike alleges it spent defending itself in this case is excessive considering the experience and expertise of the attorneys and that, other than Robinson's discovery misconduct, this case was a relatively straightforward run of the mill trademark case. *See* Appendix A; *see also Duvdevani Decl.* ¶ 96. Additionally, the Court finds it unreasonable that the majority of time logged by the primary partner on the case, over 650 hours, was billed in exact hour or half hour increments, i.e. 2.5 hours or 8 hours. *See generally Duvdevani Decl.* ¶ 53, Ex 51. There are also numerous instances in which employees logged phone calls, emails, or meetings that took exactly 0.5 hours which seems unlikely. *See generally id.*

Further, several time entries seem redundant or excessive. For example, a partner spent a total of 5 hour reviewing the 21-page complaint and 5 pages of supporting documents Plaintiffs initially filed. *See Duvdevani Decl.* ¶ 53, Ex 51, Invoice #4067394 and #4084118. There are also several instances in which the same amount of time or more time was spent reviewing and editing documents than spent drafting them. In March of

2021, an associate spent approximately 20 hours drafting and revising a motion to dismiss but a partner spent roughly 30 hours editing the motion. *Id.* at Invoice # 4094664. Similarly, the hours spent on hearing preparation are unreasonable. In October 2023, a partner spent nearly 20 hours preparing for the terminating sanctions hearing, which lasted less an than an hour and was conducted via zoom, including 7 hours on the day of the hearing, after spending dozens of hours reviewing and revising the brief supporting the motion. *Id.* at Invoice #883087670. Additionally, Nike spent time on unnecessary filings. For example, over 50 hours of firm time was spent opposing the withdrawal of Alvin Pittman as Plaintiffs' counsel. *Id.* at Invoice #883000938 and #883912203.

Ultimately, having closely examined the billing invoices the Court finds a 30% reduction in the final lodestar figure is necessary to "trim the fat" from the application. Therefore, the Court awards Nike $1,275,453.05 in attorneys' fees.

### i. Costs

Though Nike has not specified a request for costs from Plaintiffs in the current motion, the Court finds it is appropriate to include in this award certain costs as this order shall supersede the prior award of costs, Dkt. 143, and address the costs associated with Dkt. 153. Nike is still entitled to recover the $43,827.15 in costs related to the Clover Dallas investigation the Court previously awarded. *See* Dkt. 143. Further, the Court has already found cost shifting is warranted in connection with the ESI investigation. Dkt. 153 at 13:4–5.

Magistrate Judge Rosenberg ruled that Nike could engage an ESI vendor and ordered Plaintiffs to "make available to the professional ESI vendor the electronic devices to be searched for responsive information." Dkt. 107 at 7. Though the ESI vendor was to be engaged initially at Nike's expense, Magistrate Judge Rosenberg stated that Nike could "move for re-allocation of the cost in the event that additional responsive information [was] discovered" because Plaintiffs claimed they had already turned over all responsive ESI. *Id.* The massive spoliation and attempted spoliation uncovered certainly warrants a shifting of the costs associated with the ESI vendor's investigation.

Dkt. 153 at 12–13.  In total, Nike is entitled to recover $172,354.17 in costs related to the iDS investigation and report.  *See generally* Dkt. 158 at 10–11.  This includes $149,821.92 in ESI Handling Costs and $22,532.25 in costs associated with drafting the Regard Declaration.  *Id.*

Accordingly, Nike is entitled to $216,181.32 in costs related to the Clover Dallas and ESI investigations.

B.     28 U.S.C. § 1927

Nike also requests sanctions to be awarded under 28 U.S.C. § 1927 against Plaintiffs' former attorney Pittman and current attorney Williams, either as an alternative to awarding fees against NTAA or joint and severally with NTAA and one another.  *Mot.* 20:4–6.  Specifically, Nike is seeking $1,152,880.34 against Pittman and $977,004.75 against Williams in attorneys' fees.  *Mot.* 21:13-17.  Nike also seeks $460,503.36 in expert and consultant costs from Pittman and Williams.  *Mot.* 21:17-18.  Nike alleges that such an award is justified by Pittman's and William's failure to verify the veracity of Plaintiffs' claims and failure to timely respond to discovery requests and motions.  *See Mot.* at 15:27–16:3.  The Court disagrees.

There is nothing in the record that establishes bad faith conduct by either Pittman or Williams.  Neither Williams nor Pittman knowingly or recklessly raised frivolous arguments on Plaintiffs' behalf.  And Nike has not alleged that Plaintiffs' claims were filed to harass the Defendants.  *See generally Mot.*  Both Pittman and Williams seem to have believed Plaintiffs' claims were meritorious.  *See* Declaration of Alvin L. Pittman, ¶¶ 5–7; *see also Williams Decl.* ¶¶ 3–5.  It was only after Nike brought to light Robinson's misconduct that the lack of merit to Plaintiffs' claims became apparent.  Though Nike alleges that Williams and Pittman should have investigated Robinson's statements about his relationship with Clover Dallas or the lack of responsive ESI, there is no indication that either attorney was complicit in or aware of Robinson's misconduct.  Additionally, the few instances in which Plaintiffs' counsel sought deadline extensions or failed to timely respond to Nike's communications did not so multiply the proceedings or draw

out the litigation to warrant sanctions. Therefore, the Court does not find either Pittman and Williams acted in bad faith and Nike's request for fees and costs under 28 U.S.C. § 1927 is **DENIED**.

IV. **CONCLUSION**

For the foregoing reason, Defendant Nike's Motion for Attorneys' Fees and Costs Under the Lanham Act and 28 U.S.C. § 1927 is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are hereby ordered to pay $1,491,634.37 in attorneys' fees and costs. *See* Appendix A. This order supersedes the prior award of $107,349.96, Dkt. 143.

**IT IS SO ORDERED.**

Dated: April 19, 2024

HONORABLE DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

## Appendix A

| Timekeeper | Position | Rate(s) Billed | Hours Billed |
|---|---|---|---|
| Tamar Y. Duvdevani | Partner | $995.00 - $1,200.00 | 659.2 |
| Tamany J. Vinson Bentz | Partner | $848.06 - $901.00 | 33.9 |
| Marc E. Miller | Partner | $980.00 | 10.5 |
| Other Partners | Partner | $950.00 - $1,219.30 | 10.34 |
| Andrew J. Peck | Senior Counsel | $1,325.00 - $1,364.70 | 26.7 |
| Joshua Schwartzman | Associate | $600.00 - $693.00 | 1,283.1 |
| Oscar M. Orozco-Botello | Associate | $808.50 | 1.4 |
| Jared J. Greenfield | Associate | $593.60 | 3.0 |
| Emily A. Green | Associate | $560.00 - $576.80 | 502.5 |
| Gaby Velkes | Associate | $575.00 - $602.20 | 224.1 |
| Maegan N. Stanley | Associate | $565.00 - $581.90 | 144.0 |
| Valerie Ruppert (Valerie Fadis) | Paralegal | $352.47 - $398.60 | 176.2 |
| Michelle Burch | Paralegal | $150.00 | 11.3 |
| Russ Richardson | Senior Financial Investigation Specialist | $655.00 | 2.4 |
| Research and E-Discovery Specialists and Staff | Specialist/Staff | $330.00 - $469.86 | 108.2 |
| **Total Hours Billed** | | | **3,196.84** |

| | |
|---|---:|
| Requested Fee Award | $1,983,684.25 |
| Reduction for Prior Award Exclusions | $146,735.31 |
| Reduction for Upward Adjustments | $14,873.16 |
| **Subtotal** | **$1,822,075.78** |
| **30% Across-the-board Reduction** | **$1,275,453.05** |
| Costs Previously Awarded | $43,827.15 |
| Costs Awarded re: Dkt. 153 | $172,354.17 |
| **Total Costs** | **$216,181.32** |
| **Total Attorneys' Fees and Costs Award** | **$1,491,634.37** |

**Appendix B**

September 26, 2022 – September 30, 2022

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Tamar Y. Duvdevani | 20 | $1,114.40 | $22,288.00 |
| Joshua Schwartzman | 4.1 | $660.00 | $2,706.00 |
| Emily A. Green | 20.6 | $576.80 | $11,882.08 |
| Gaby Velkes | 7.3 | $676.00 | $4,934.80 |
| Valerie Ruppert | 1.2 | $387.00 | $464.40 |
| **Total** | | | **$42,275.28** |

October 1, 2022 – October 31, 2022

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Tamar Y. Duvdevani | 85.1 | $1,114.40 | $94,835.44 |
| Tamany J. Vinson Bentz | 3.9 | $901.00 | $3,513.90 |
| Joshua Schwartzman | 65.6 | $660.00 | $43,296.00 |
| Emily A. Green | 28.5 | $576.80 | $16,438.80 |
| Gaby Velkes | 7.4 | $676.00 | $5,002.40 |
| Maegan N. Stanley | 1.2 | $565.00 | $678.00 |
| Valerie Ruppert | 10.9 | $387.00 | $4,218.30 |
| **Total** | | | **$167,982.84** |

## Appendix C

| Invoice Number Invoice Date | Upward Adjustment @ Rate | Total Upward Adjustment |
|---|---|---|
| Invoice #: 4094664 April 14, 2021 | 0.18 @ $848.06 | $152.65 |
| Invoice #: 4111869 May 19, 2021 | 0.5 @ $357.40 0.52 @ $848.15 | $178.70 $441.04 |
| Invoice #: 4124635 June 15, 2021 | 0.089 @ $367.50 0.31 @ $854.13 | $32.71 $264.78 |
| Invoice #: 4142284 July 21, 2021 | 1.93 @ $560.94 0.08 @ $372.75 0.08 @ $892.63 | $1,082.61 $29.82 $71.41 |
| Invoice #: 4221140 December 22, 2021 | 0.53 @ $352.47 1.49 @ $330.22 | $186.81 $492.03 |
| Invoice #: 4249372 February 28,2022 | 0.89 @ $382.06 | $340.03 |
| Invoice #: 4263739 March 29, 2022 | 0.44 @ $909.02 0.29 @ $465.38 0.27 @ $1,307.15 | $399.97 $134.96 $352.93 |
| Invoice #: 4273510 April 14, 2022 | 0.63 @ $896.27 | $564.65 |
| Invoice #: 4293883 May 23, 2022 | 0.36 @ $423.69 1.08 @ $468.58 | $152.53 $506.07 |
| Invoice #: 4310226 June 27, 2022 | 0.3 @ $392.77 0.42@ $670.31 0.36 @ $1,316.92 | $117.83 $281.53 $474.09 |
| Invoice #: 4325763 July 25, 2022 | 1.95 @ $898.76 0.97 @ $1,328.53 | $1,752.58 $1,288.67 |
| Invoice #: 4337738 August 17, 2022 | 1.34 @ $359.81 | $482.15 |
| Invoice #: 4356222 September 22, 2022 | 0.14 @ $375.64 1.16 @ $899.30 0.27 @ $465.11 | $52.59 $1,043.19 $125.58 |
| Invoice #: 4367150 October 13, 2022 | 0.45 @ $891.62 0.98 @ $469.86 | $401.23 $460.46 |
| Invoice #: 4393628 November 29, 2022 | 1.51 @ $1,009.15 0.53 @ $1,219.30 | $1,523.82 $646.23 |
| Invoice #: 4423003 | 0.63 @ $385.63 | $242.95 |

| January 27, 2023 | | |
|---|---|---|
| Invoice #: 4435340 | 0.88 @ $677.91 | $596.56 |
| February 23, 2023 | | |

**Total Adjustments** $14,873.16